# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GLEN WELCH (#323336)**                                                **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                                          **NO. 12-0038-JJB-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 9, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GLEN WELCH (#323336)**                                                        **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                                        **NO. 12-0038-JJB-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed a response in opposition to the petitioner's application. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Glen Welch, challenges his criminal convictions and sentences, entered in 1997 after a jury trial conducted in the Parish of East Baton Rouge, State of Louisiana, on one count of second degree murder, one count of attempted second degree murder, and one count of being a felon in possession of a firearm. The petitioner contends:

I. The trial court erred in failing to unilaterally sever the trial of the felon-in-possession charge from the trial of the other two charges, and alternatively, that the petitioner was provided with ineffective assistance when his trial counsel failed to move for a severance;

II. The trial court erred in failing to grant the petitioner's request for a copy of the transcript of his first trial that ended in a mistrial;

III. The trial court abused its discretion in ordering a mistrial in connection with the petitioner's first trial;

IV. The petitioner was provided with ineffective assistance of counsel when his attorney

(a) failed to move for a severance,

(b) failed to effectively cross-examine a witness relative to prior inconsistent statements regarding identification,

(c) failed to interview two available alibi witnesses regarding identification,

(d) failed to effectively cross-examine surprise witnesses presented by the State with regard to identification,

(e) failed to adequately prepare for trial in several respects by (1) failing to file a motion to quash the indictment relative to the felon-in-possession charge, (2) failed to consult with the petitioner's prior attorneys, (3) failed to interview state witnesses, and (4) failed to obtain a transcript of the petitioner's first trial,

(f) failed to timely move for a continuance or request a stay despite admittedly being unprepared for trial, and

(g) failed to move to quash the indictment relative to the felon-in-possession charge inasmuch as the petitioner was not a convicted felon at the time of indictment;

V. The State engaged in prosecutorial misconduct by failing to disclose exculpatory evidence, by presenting surprise witnesses and by knowingly presenting false testimony from two witnesses; and

VI. The petitioner was provided with ineffective assistance of counsel on appeal when his appellate attorney failed to raise as issues (a) the trial court's denial of his motion for a copy of the transcript of the first trial, and (b) the alleged insufficiency of the evidence; and he is entitled to DNA testing of certain evidence pertinent to his convictions.

<u>Factual And Procedural Background</u>

On the night of October 7, 1995, according to the evidence adduced at trial, a fight broke out at around 1:00 a.m. on the dance floor at the Mahogany Grill on Airline Highway in East Baton Rouge Parish. One of the patrons, identified as the petitioner at trial, was subsequently escorted from the bar. Shortly thereafter, the bar began to close and the lights were turned up. Within a short time thereafter, an assailant entered the bar with a gun and fired several shots into the crowd. Douglas Chenovert was killed by this gunfire and John McKnight was wounded. Several witnesses identified the petitioner as the person who committed the charged offenses.

Based upon the foregoing, a grand jury indicted the petitioner on one count of second degree murder, one count of attempted second degree murder and, inasmuch as the petitioner had a previous 1993 conviction for possession of cocaine, one count of being a felon in possession of

a firearm. After discovery and after the filing and resolution of pretrial motions, a jury trial commenced on August 12, 1997. However, when the petitioner's retained attorney failed to appear on the third day of trial, and after a bench warrant was issued for the attorney and a hearing conducted the next day, a mistrial was declared by the state trial judge.

Approximately one month after the mistrial was declared, on or about September 17, 1997, the trial court appointed substitute counsel on behalf of the petitioner and, approximately six weeks after such appointment, the petitioner's second trial began on November 3, 1997. Although the petitioner's attorney had filed a motion requesting a copy of the trial transcript from the first trial, the state court judge denied the motion on the morning of trial, noting that the attorney had been offered access to the audio tapes of the first trial. Upon conclusion of the trial, the petitioner was found guilty as charged on all three counts. Through his attorney, the petitioner filed a Motion for Post-Verdict Judgment of Acquittal, which motion was denied by the state court on December 4, 1997. The petitioner was thereafter sentenced, on December 5, 1997, to life imprisonment in connection with the second degree murder charge, to fifty (50) years in confinement in connection with the attempted second degree murder charge, and to fifteen (15) years in confinement in connection with the felon-in-possession charge. The sentences for attempted second degree murder and for being a felon in possession of a firearm were ordered to be served concurrently with each other and consecutively to the sentence imposed in connection with the offense of second degree murder. In addition, all sentences were to be served without the benefit of probation, parole or suspension of sentence, and the sentence imposed on the attempted second degree murder charge was directed to be served without the benefit of good time.

The petitioner appealed the referenced convictions, asserting as a single assignment of error that the trial court erred in failing to sever the felon-in-possession charge from that of the other two offenses and, in the alternative, that the petitioner had been provided with ineffective assistance of counsel when his attorney failed to move to sever the offenses. Pursuant to a decision dated February 19, 1999, the Louisiana Court of Appeals for the First Circuit denied the appeal, concluding that (1) by failing to file a timely motion to quash the indictment prior to trial, the petitioner had procedurally waived the severance claim, and (2) there was no error in the trial court's failure to sever the claims *sua sponte*. In addition, the appellate court concluded that the petitioner's alternative ineffective-assistance-of-counsel claim should be deferred, pending consideration in connection with a subsequent application for post-conviction relief. *See State v. Welch*, 738 So.2d 201 (La. App. 1st Cir. 1999). The petitioner thereafter sought further review in the Louisiana Supreme Court and, on September 3, 1999, the Supreme Court denied review without comment. *See State v. Welch*, 747 So.2d 535 (La. 1999).

On or about August 16, 2000, the petitioner filed an application for post-conviction relief ("PCR") in the state trial court, asserting that (1) the trial court erred in not severing, on its own initiative, the prejudicial felon-in-possession count from the other two offenses, (2) the trial court erred in not granting the petitioner's request for a transcript of the first trial, (3) the trial court abused its discretion in unilaterally declaring a mistrial of the first trial, and (4) the petitioner was provided with ineffective assistance of counsel. Pursuant to a recommendation issued by the state court Commissioner on October 11, 2000, which recommendation was accepted by the state trial judge on November 13, 2000, the court dismissed the PCR application without a hearing. Upon the filing of supervisory writs in the intermediate appellate court, however, the appellate court vacated the trial court's Ruling on April 11, 2001, and remanded the matter to the trial court,

4

specifically for an evidentiary hearing in connection with the petitioner's claim of ineffective assistance of counsel.

Upon remand, the trial court appointed an attorney to represent the petitioner, and the petitioner filed several *pro se* supplements to his original PCR application, asserting numerous specific claims of alleged ineffective assistance of counsel. The petitioner's appointed PCR attorney also filed one or more memoranda in support of the supplemented PCR application. After the filing of various pleadings in the state district and appellate courts, an evidentiary hearing was finally conducted on April 22 and June 1, 2004, in connection with the petitioner's claims of ineffective assistance of counsel. After the submission of post-hearing memoranda and prior to a decision being issued in connection with the evidentiary hearing, the petitioner filed *pro se* pleadings in February and December 3, 2005, seeking to supplement his PCR application with entirely new claims of prosecutorial misconduct, asserting that (1) the prosecution withheld exculpatory documentation from the defense, (2) the prosecution knowingly utilized false or perjured testimony at trial.[1] In addition, in November, 2006, the petitioner filed yet another *pro se* supplemental memorandum in support of his PCR application, again asserting entirely new claims, this time that (1) he was provided with ineffective assistance of counsel on appeal in several respects and (2) he was entitled to DNA testing of certain evidence pertinent to the charged offenses. The trial court did not order the state to respond to these supplemental claims.

Finally, on December 2, 2008, the state court Commissioner issued a report addressing the petitioner's PCR application. First, the Commissioner recommended that the several supplemental claims submitted by the petitioner in 2005 and 2006, after the PCR evidentiary

---

1. It appears that in April, 2005, the petitioner's attorney filed a pleading adopting the petitioner's *pro se* claims of prosecutorial misconduct.

hearing, not be considered or allowed. Whereas the Commissioner had initially allowed the filing

of these supplemental claims and, in fact, by Order dated October 18, 2006, had directed the

petitioner to submit "any additional supplemental *pro se* pleadings" he might have, the Order

explicitly referred to the assertion of claims "pertaining to the petitioner's *pending* application for

post-conviction relief" (emphasis added). In thereafter addressing the supplemental claims, the

Commissioner ultimately concluded that the claims were untimely, noting specifically in this

regard that "the State has already responded to the merits of the petitioner's claims and ... the

instant application for post-conviction relief has been pending since August of 2000." *See*

Commissioner's Report dated December 2, 2008, p. 6.[2]

The Commissioner's report thereafter addressed the petitioner's remaining PCR claims

and recommended that most of the petitioner's claims be rejected, in part as procedurally barred

and in part as being without merit. The Commissioner ultimately recommended, however, that

the petitioner's convictions be reversed based upon the ineffective assistance of his counsel in

several respects. Specifically, the Commissioner concluded that the petitioner's attorney had

failed to effectively cross-examine a state witness, Cedric Williams, failed to interview two

potential alibi witnesses, and failed to timely move for a continuance of the trial.

Notwithstanding, on May 20, 2010, the state trial judge entered a written opinion that, while

accepting the Commissioner's recommendation in all other respects, rejected the Commissioner's

recommendation that the petitioner was entitled to a reversal of his convictions based upon the

---

2. The Commissioner's recommendation regarding the untimeliness of the petitioner's
supplemental claims referred explicitly only to the supplemental claims of prosecutorial
misconduct submitted in February and December, 2005. It is implicitly clear, however, that the
Commissioner's determination of untimeliness is equally applicable to the petitioner's *pro se*
supplemental claims asserted in November, 2006.

ineffective assistance of his trial attorney.  Thus, the state court judge denied the petitioner's PCR application in full.

The petitioner, through his attorney, filed a timely application for supervisory review in the intermediate appellate court, asserting the claims that the trial court erred in denying post-conviction relief based on the failure of the petitioner's attorney (1) to cross-examine the State's witness, Cedric Williams, relative to prior inconsistent statements, (2) to cross-examine the State's witnesses, Frank Marquez, April Bennett and Leonard Williams relative to their omissions and prior inconsistent statements, (3) to call alibi witnesses to testify at trial, (4) to seek to quash the indictment relative to the joinder of the felon-in-possession count with that of the other two charges, and (5) to adequately prepare for trial, conduct a reasonable pretrial investigation and/or request a continuance.  In addition, the petitioner filed two *pro se* writ applications wherein he asserted the additional claims that are now before this Court.  Pursuant to a decision entered on September 27, 2010, the Louisiana Court of Appeals for the First Circuit denied the petitioner's writ application without comment.

On or about October 25, 2010, the petitioner filed a *pro se* application for supervisory review in the Louisiana Supreme Court, asserting the claims that:

(1) The trial court erred in failing to sever the felon-in-possession count from the other two counts charged in the indictment;

(2) The trial court erred in failing to grant the petitioner's motion for a copy of the transcript of his first trial;

(3) The trial court abused its discretion by unilaterally ordering a mistrial in connection with the petitioner's first scheduled trial;

(4) The petitioner was provided with ineffective assistance at trial when his attorney:

(a) failed to seek a severance of the felon-in-possession charge from the trial on the other two offenses and/or object to evidence relative to the petitioner's prior conviction for possession of cocaine;

(b) failed to cross-examine the State's witness, Cedric Williams, relative to prior inconsistent statements as to identification;

(c) failed to interview potential defense witnesses, Katrice Manchester and Jennifer Day, who were available and had material information relative to identification;

(d) failed to effectively cross-examine the State's witnesses, Frank Marquez, April Bennett and Leonard Williams, relative to omissions and prior inconsistent statements;

(e) failed to adequately prepare for trial by failing to note severance as an issue, failing to consult with the petitioner's prior attorneys, failing to interview the State's witnesses, and failing to obtain a transcript of the prior trial;

(f) failed to timely request a continuance or stay of the trial; and

(g) failed to file a motion to quash the indictment relative to joinder of the felon-in-possession charge because he was not a convicted felon at the time of issuance of the indictment;

(5) The State engaged in prosecutorial misconduct by withholding evidence and by knowingly presenting surprise witnesses and the false and/or perjured testimony of witnesses Leonard Williams and Frank Marquez; and

(6) The petitioner was provided with ineffective assistance on appeal when his appointed appellate attorney failed to raise as issues (1) the trial court's failure to provide a copy of the transcript of the first trial and (2) the alleged insufficiency of the evidence; and he should be allowed DNA testing of certain items of evidence pertinent to his case, which claims were never addressed by the lower courts, thereby necessitating a remand to the trial court.

On September 30, 2011, the Louisiana Supreme Court denied the petitioner's writ application without comment. *See State ex rel. Welch v. State*, 71 So.3d 279 (La. 2011).

Finally, on or about January 19, 2012, the petitioner filed the instant application for habeas corpus relief in this Court. The application appears to be timely. No evidentiary hearing is required in connection with the petitioner's claims.

<u>Legal Analysis</u>

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination.  *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.  *Id.  See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").  State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## I. The Petitioner's Claim That The Trial Court Erred In Failing To Unilaterally Sever The Felon-In-Possession Charge From The Other Charges Is Without Merit

In his first claim, the petitioner complains that he should not have been compelled to proceed to trial on an indictment that jointly charged him with second degree murder, attempted second degree murder and possession of a firearm by a convicted felon.[3]  Whereas neither his initial trial attorney nor the attorney appointed to represent him for his second trial filed, on the basis of alleged mis-joinder of offenses, a motion to quash the indictment, the petitioner contends that the trial court should have noted the prejudicial nature of the joinder and should have undertaken to sever the offenses on its own motion.  The petitioner further asserts that he was prejudiced by this failure because the joinder of the felon-in-possession charge allowed evidence of a prior conviction for possession of cocaine to be admitted at trial, thereby tainting the jury.  In addressing this claim on direct appeal, the state appellate court found that the petitioner had waived this claim because no timely motion to quash the indictment or sever the trials had been filed, and Louisiana procedural law provides that "the objection[] of misjoinder ... of offenses may be urged only by a motion to quash the indictment .... [and] [a] motion to quash based on misjoinder shall be made or filed within fifteen days after arraignment unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate."  The appellate court further found that there was no legal basis for the petitioner's assertion that, in the absence of a motion to quash, the trial court could have or should have *sua sponte* severed the trials.

---

3.  The petitioner's alternative claim that his attorney(s) should have filed a motion to sever the felon-in-possession charge and/or objected to the introduction of evidence relative to the petitioner's prior conviction will be addressed by the Court in connection with the plaintiff's Claim No. IV, *infra*.

As correctly pointed out by the state, the petitioner's argument before the state district and appellate courts relative to severance was based entirely upon an application of Louisiana law. In this regard, it has been uniformly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire, supra,* 502 U.S. at 68; *Engle v. Isaac*, 456 U.S. 107, 119 (1982). By failing to present any argument or authority based upon the application of federal law or the United States Constitution, the petitioner has failed to present a cognizable claim for review before this Court. Further, even had the plaintiff directed this Court's attention to applicable federal law in connection with this claim, there is little likelihood that this argument would afford an avenue for relief. *See United States v. Turner,* 674 F.3d 420, 430-31 (noting that the decision to grant a severance is within the discretion of the trial court, and "[i]n many instances, prejudice from failure to sever counts can be cured through an appropriate jury instruction, and ... juries are presumed to follow such instructions"); *United States v. Davis,* 2003 WL 1904039, *6 (E.D. La. April 16, 2003) (reiterating the general rule that, in most instances, a limiting jury instruction "is sufficient to cure potential prejudice from felon-in-possession counts, barring circumstances that would make limiting instructions insufficient"). In those few federal cases where the failure to sever a felon-in-possession charge from one or more other charges was found to potentially warrant relief, the evidence on the other charges was found to be extremely weak and there was evidence of apparent ill motive on the part of the government in adding the weapons count. *See United States v. McCarter*, 316 F.3d 536 (5th Cir. 2002). In the instant case, the evidence against the petitioner was strong, consisting of several eyewitnesses who identified the petitioner as the

11

perpetrator of the shooting, and none of the other factors in *McCarter* are here present.

Accordingly, the Court finds that this claim is without merit and should be rejected.

II and III.  The Petitioner's Claims That The Trial Court Erred In
Denying His Request For A Transcript Of The First Trial And In
<u>Unilaterally Ordering A Mistrial Of The First Trial Are Procedurally Defaulted</u>

In the petitioner's Claims No. II and III, the petitioner asserts that the trial court erred in

failing to grant the petitioner's request for a transcript of his first trial and in unilaterally ordering

a mistrial during the initial trial when his trial attorney failed to appear on the third day thereof.

These claims are subject to dismissal on the basis of procedural default.  In this regard, the record

reflects that the petitioner first asserted these claims in connection with his PCR application in the

state trial court, and the state court Commissioner recommended that these claims be dismissed

pursuant to article 930.4(B) of the Louisiana Code of Criminal Procedure, which statute provides

that, "[i]f the application alleges a claim of which the petitioner had knowledge and inexcusably

failed to raise in the proceedings leading to conviction, the court shall deny relief."  Pursuant to

its Order dated May 20, 2010, the trial court accepted the Commissioner's recommendation in

this regard.

When a state court decision to deny post-conviction relief rests on a state procedural basis

that is independent of the federal questions raised by the petitioner and is adequate to support the

judgment, the federal court lacks jurisdiction to review the merits of the Petitioner's federal

claims.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*, 83 F.3d 699, 701

(5th Cir. 1996).  The independent and adequate state ground doctrine "applies to bar federal

habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner

ha[s] failed to meet a state procedural requirement."  *Coleman v. Thompson, supra*, 501 U.S. at

729-730.  The basis for the application of the doctrine is grounded in concerns of comity and

federalism and is related to the requirement that a habeas petitioner first provide the state courts

with an opportunity to address and correct violations of a prisoner's federal rights:

> [A] habeas petitioner who has failed to meet the States's procedural requirements for
> presenting his federal claims has deprived the state courts of an opportunity to address
> those claims in the first instance....  In the absence of the independent and adequate state
> ground doctrine in federal habeas, habeas petitioners would be able to avoid the
> exhaustion requirement by defaulting their federal claims in state court.  The independent
> and adequate state ground doctrine ensures that the States' interest in correcting their own
> mistakes is respected in all federal habeas cases.

*Id.* at 731-32.

For the independent and adequate state ground doctrine to apply, the state court

adjudication of a habeas petitioner's claim must have been, as here, explicitly based on a state

procedural rule.  *Moore v. Roberts, supra*, 83 F.3d at 702.  Moreover, the doctrine applies even if

the state court reaches the merits of the claim in the alternative.  *See Harris v. Reed*, 489 U.S.

255, 264 n. 10 (1989); *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2005).  "The procedural

default doctrine presumes that the 'state court's [express] reliance on a procedural bar functions

as an independent and adequate ground in support of the judgment.'"  *Id., quoting Sones v.

Harbett*, 61 F.3d 410, 416 (5th Cir. 1995).  The petitioner can rebut this presumption only by

establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by

(1) demonstrating "cause for the default and actual prejudice as a result of the alleged violation of

federal law" or (2) demonstrating that "failure to consider the claims will result in a fundamental

miscarriage of justice."  *Id.  See also Coleman v. Thompson, supra*, 501 U.S. at 750.

In the first place, Article 930.4(B) of the Louisiana Code of Criminal Procedure has been

found to be an independent and adequate procedural bar sufficient to bar federal habeas review.

*See, e.g., Mathieu v. Tanner*, 2014 WL 5465854, *11 (E.D. La. Oct. 28, 2014); *Thomas v. Cain*,

2012 WL 1885088, *4 (E.D. La. May 23, 2012) and cases cited there.  Moreover, the petitioner

has failed to show that there exist the necessary cause and prejudice to overcome the procedural bar. To establish "cause," the petitioner must show that some objective factor external to the defense prevented him from timely raising his claim in state court. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). To establish prejudice, the petitioner must show, "not merely that the [asserted] errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (Emphasis in original). Neither "cause" nor "prejudice" is present in the instant case that would support this Court's disregard of his procedural default. Further, to demonstrate that a failure to consider the claim will result in a "fundamental miscarriage of justice," a habeas petitioner must show, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999). To establish such actual innocence, the petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* In the absence of any such showing, the Court is precluded from a consideration of the referenced claims.

### IV. The Petitioner's Claim That He Was Provided With Ineffective Assistance Of Counsel Is Without Merit

The petitioner next asserts that he was provided with ineffective assistance of counsel in several respects that will be addressed hereafter. In this regard, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient," *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment;

and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter, supra*, 796 F.2d at 817. Great deference is afforded to counsel's exercise of professional judgment. *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington, supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter, supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered

the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  *Id.* at 816-17.  Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

**(a)     Failure to Request a Severance of the Felon-in-Possession Charge.**

As discussed above, the petitioner presented a claim on direct appeal that the felon-in-possession charge should have been severed from the other two charges, and the Louisiana appellate court found that this claim had been waived by the petitioner's failure to file a timely motion to quash the indictment.  The appellate court, however, deferred consideration of the plaintiff's related claim of ineffective assistance of counsel in this regard.  Thereafter, in addressing this claim on post-conviction review, the state court Commissioner concluded that the petitioner was unable to show that any prejudice had resulted from inclusion of the referenced charge in the indictment.  Specifically, the Commissioner found that, whereas the inclusion of the felon-in-possession charge allowed the jury to be informed that the petitioner had been convicted of a prior felony, *i.e.,* possession of cocaine, in 1993, there was no reasonable likelihood that the outcome of the trial would have been different had the jury not been so informed.  The Commissioner noted that "[t]he petitioner's argument might have more credibility if his prior conviction had been for a violent offense, which, in that case, might have prejudiced the petitioner by indicating a predilection to commit murder."   Commissioner's Report dated December 2, 2008, p. 10.  However, the mere introduction of evidence that the petitioner had been convicted of possession of cocaine four years prior to trial could not reasonably be seen to have prejudiced the

petitioner to such an extent as to lead the jury to convict him on charges of second degree murder and attempted second degree murder. Accordingly, the Commissioner recommended that this claim be denied as lacking in merit, and the state district court judge accepted this recommendation. This Court finds no unreasonable application of federal law in this determination by the state court. *Cf., Jones v. Warden, Washington Correctional Center Franklinton, La.*, 2012 WL 5472553, *12-14 (E.D. La. Sept. 13, 2012) (finding no deficient performance in the failure of the petitioner's attorney to move for severance of a felon-in-possession charge). Accordingly, the petitioner's claim in this regard should be rejected.

**(b)     Failure to Effectively Cross-Examine the State's Witness, Cedric Williams.**

The petitioner next contends that his trial attorney provided ineffective assistance by failing to effectively cross-examine a state witness, Cedric Williams, regarding inconsistencies between the witness' testimony at trial and the witness' prior statements contained in three (3) documents that were purportedly in possession of the petitioner's attorney. Specifically, whereas the witness testified at trial that he observed the petitioner being ejected from the club for fighting prior to the incident, that he observed the petitioner thereafter return and shoot the victims, that the petitioner was wearing blue jeans and a white t-shirt, and that the petitioner was wielding a chrome or silver gun, the brief description of the witness' statement contained in a police report prepared a day or so after the shooting, October 8 or 9, 1995, was that the petitioner was wearing "all black," *See* Exhibit "B" to Post-Trial Memorandum in Support of Application for Post-Conviction Relief, Tr. R. Vol. 5, and in a subsequent recorded interview between the witness and a police investigator on October 18, 1995, the witness stated that the perpetrator had a "black revolver ... [a] [b]lack rusty gun," and a "tattoo in between his eyes." *See id.,* Exhibit "A". Finally, in a brief affidavit purportedly executed by the witness on March 6, 1997, approximately

17

1½ years after the incident, the witness stated that whereas he had seen the petitioner at the scene of the shooting, he had not actually seen the petitioner shoot the victims or anyone else and that his prior statements had been made "under emotional distress." *See id.*, Exhibit "C". The petitioner contends that his trial attorney made no attempt whatever to cross-examine the witness relative to these inconsistencies between his testimony at trial and his prior statements, and that this failure constituted ineffective assistance of counsel. The state court Commissioner concluded that this contention had merit, that the failure to effectively cross-examine this witness relative to the prior inconsistent statements was deficient performance, and that, based upon "a reasonable probability that, absent the error, the jury would have had a reasonable doubt with respect to the identification of the petitioner as the shooter in this case," the petitioner was entitled to a reversal of the resulting convictions. Commissioner's Report dated December 2, 2008, p. 12.

Notwithstanding the foregoing, the state trial judge rejected the Commissioner's recommendation in connection with this claim, relying principally upon a conclusion that the petitioner was unable to sufficiently establish prejudice resulting from the petitioner's attorney's conduct. In the first place, the trial judge found that it was unclear whether the petitioner's attorney had even been in possession of the referenced affidavit – executed by the witness long after the shooting – specifically because the petitioner's attorney testified at the PCR hearing that he did not recall having received it and also because the *original* affidavit was not produced at the PCR hearing. In addition, the court noted that there was competing testimony regarding who had been in possession of the original affidavit, with the petitioner testifying inconsistently at the PCR hearing that it had been in his attorney's possession at trial but was currently in his mother's possession. Further, and more importantly, the trial judge noted that the affidavit did nothing to establish the petitioner's innocence in any event – it only purportedly asserted that the witness did

not personally observe the petitioner commit the shooting. The affidavit nonetheless specifically states that the witness observed the petitioner at the scene of the shooting, and it does not counteract the witness' prior statements that the witness observed the petitioner fighting in the bar and ejected therefrom before the shooting and that he observed the petitioner in possession of a revolver prior to or during the offense. The affidavit also does nothing to counteract the eyewitness testimony of multiple other witnesses who unequivocally testified that they observed the petitioner at the bar shortly before the shooting and that they observed the petitioner commit the offenses.

Finally, with regard to the failure of the petitioner's attorney to cross-examine Cedric Williams with regard to the witness' inconsistent statements contained in the police report and the recorded interview, the trial judge ultimately concluded that, considering the totality of the evidence and the strength of the other eyewitness testimony presented at trial, the petitioner's guilt was established beyond a reasonable doubt and was not substantially called into question by any failure on the part of the petitioner's attorney to more aggressively attack the credibility of Cedric Williams. Specifically, as opined by the trial judge:

> In the instant case, there are two eyewitnesses besides Cedric Williams who unequivocally identified the petitioner as the shooter at trial. Specifically, Frank Marquez, a disc jockey at the Mahogany Bar where the offense took place, testified that he was one hundred percent sure that the defendant was the person who fired the weapon in the bar. Leonard Williams testified that he is one hundred percent sure that the defendant is the person who fired the weapon into the bar. In addition, there are three eyewitnesses that place the petitioner at the scene shortly before the shooting, and one of those witnesses identified petitioner as a person holding a gun shortly before the shooting. Specifically, April Bennet testified that she saw the defendant with a big long pistol in his hands shortly before she heard gun shots coming from the bar and also testified that she did not see anyone else with a gun besides the defendant. John McKnight testified that he saw the defendant being escorted out of the club and, that minutes later the shooting took place. Devin Ramsey, the bar owner and operator who knew the defendant and his mother before the incident, testified that he escorted the defendant out of the club because the defendant was involved in an altercation with another patron approximately fifteen (15) minutes

before the shooting occurred.  Because of the overwhelming evidence regarding the issue of identification, this Court does not find there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This Court therefore finds that petitioner's claim ... is without merit.

*See* Judge's Ruling on PCR Application dated May 20, 2010, p. 3.  (record references omitted).

Although the issue appears to be a close one in this case, this Court ultimately accepts the finding of the state court that the petitioner is not entitled to relief in connection with this claim. Whereas the failure of the petitioner's attorney to cross-examine Cedric Williams regarding the witness' prior inconsistent statements may ultimately be seen to have amounted to deficient performance, the state trial court concluded, based upon the totality of the evidence presented at trial, including the judge's familiarity with the issues and the evidence after having presided over both the first and second trials, that the petitioner was not prejudiced by the attorney's conduct.  It is not the province of a reviewing federal Court to substitute its evaluation of the evidence and claims for that of the state court.  Rather, the "doubly deferential" review engaged in by this Court in the context of a claim of ineffective assistance is focused upon evaluating whether the trial court utilized the correct legal standard and arrived at a determination that is neither contrary to federal law nor an unreasonable evaluation of the facts in light of the evidence presented.  In the instant case, there was a wealth of testimony from witnesses other than Cedric Williams that placed the petitioner at the scene of the offense and identified the petitioner as the perpetrator of the charged crimes.  Thus, although it may be concluded that the petitioner's attorney should have more aggressively cross-examined the witness with the apparently inconsistent prior statements, this Court ultimately accepts the trial court's determination that the attorney's failure to do so was not such deficiency as to be "sufficient to undermine confidence in the outcome."  *Martin v.*

*McCotter, supra*, 796 F.2d at 816-17.  Accordingly, the Court finds that the petitioner's contentions relative to this claim should be rejected.

**(c)      Failure to Interview Alibi Witnesses Katrice Manchester and Jennifer Day.**

The petitioner next contends that his attorney provided ineffective assistance by failing to interview two alibi witnesses, Katrice Manchester and Jennifer Day, prior to or during trial.  At the hearing on post-conviction relief, these witnesses testified that they had been present at the trial and available to testify that they were with the petitioner on the night of the shooting and that he therefore could not have committed the charged offenses.  Evidence was further adduced at the post-conviction hearing by the petitioner and his mother that the identities of these witnesses had been provided to the petitioner's attorney prior to trial, yet the petitioner's attorney failed to interview them and made no attempt to call them as witnesses on the petitioner's behalf.  The state court Commissioner concluded that this failure amounted to deficient performance and that the likely prejudice resulting from such failure warranted a reversal of the petitioner's convictions.  *See* Commissioner's Report dated December 2, 2008, p. 14.  Notwithstanding, the trial court declined to accept this recommendation and instead rejected the petitioner's claim in this regard.

This Court finds that the decision of the state court was not an unreasonable application of federal law in light of the facts presented.  As pointed out by the trial judge, Louisiana procedural law requires that a criminal defendant has only ten days to disclose the identities of potential alibi witnesses after a written request therefor is made by the prosecution.  La. Code Crim. P. art. 727.  As further pointed out by the judge, the prosecution made such a formal written request in a Reciprocal Motion for Discovery filed on May 6, 1996, more than a year prior to the petitioner's first trial.  Tr. R., Vol. I, p. 49.  As a result, the petitioner's then-attorney had had only until May

16, 1996, to file a notice of alibi witnesses, and no such notice was filed. As explained by the petitioner's appointed counsel in a statement made to the court on the record at the second trial, the attorney believed himself to be constrained by this procedural posture of the case, and he advised the state court that he would not be presenting alibi witnesses for this reason. Tr. R. Vol. II, pp. 456-58. The prosecutor, recognizing that this might later become an issue on appeal, requested a ruling from the trial judge, who made it clear that, in light of the petitioner's failure to provide a timely notice in accordance with La. Code Crim. P. art. 727, the court "wouldn't allow alibi witnesses at this late stage." Tr. R., Vol. II, p. 458.

In finding that the failure to make any attempt to introduce the testimony of the referenced alibi witnesses constituted deficient performance warranting reversal of the petitioner's convictions, the state court Commissioner concluded that the petitioner's attorney should have moved to introduce the witnesses' testimony in reliance on La. Code Crim. P. art. 727(E), which potentially affords relief "for good cause shown" in connection with the 10-day deadline for providing a notice of alibi witnesses. In addition, the Commissioner opined that such a motion, had it been denied, would have preserved the issue for appellate review. Notwithstanding, the state trial judge rejected the Commissioner's recommendation, essentially finding that the "good cause" exception for late notice was unavailable to the petitioner and that the petitioner's motion, had it been submitted, would have been denied and the determination upheld on appeal. This conclusion was based in part upon the court's clear statement during trial that, even if an attempt had been made to call one or more alibi witnesses, the court would not have allowed the testimony "at [that] late stage" of the proceedings, and also upon indications in the record that the petitioner may have intentionally withheld information regarding alibi witnesses from his attorneys and from the court until shortly before or during trial. *See* Judge's Ruling on PCR

Application dated May 20, 2010, p. 5.  In addition, the trial court concluded, in any event, that the testimony of the alibi witnesses did not clearly exonerate the petitioner inasmuch as the witnesses testified at the post-conviction hearing only that they had observed the petitioner at a place other than the scene of the shooting at between 12:00 and 1:30 a.m., whereas the shooting apparently occurred at around 2:00 a.m.  As stated by the trial court;

> [I]f a witness's testimony would not establish a viable defense, counsel's performance would not be deficient for failing to call them....  Neither Ms. Manchester's nor Ms. Day's testimony, even if believed, could have positively ruled out petitioner's presence at the scene at the time of the offense.  Mr. Town's performance cannot be considered deficient.  Therefore, petitioner cannot satisfy the first prong of *Strickland v. Washington, supra.*

*See id.* at p. 6.  Finally, and in any event, the state trial court found that the petitioner was not prejudiced by the failure to interview or call the alibi witnesses to testify:

> [E]ven assuming, arguendo, that counsel's performance was deficient, petitioner cannot satisfy the second prong of *Strickland v. Washington, supra*, that the deficiency prejudiced him.  As aforementioned, there is overwhelming evidence regarding the issue of identification.  Even if the alibi witnesses had been called to testify, this Court does not find there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.*  This Court does not find that the above conclusion of the state trial court is an unreasonable interpretation of the law in light of the facts presented at trial and at the petitioner's evidentiary hearing.  Numerous witnesses identified the petitioner as having been at the Mahogany Grill at the time of commission of the offenses.  Moreover, the credibility of the testimony of the two alibi witnesses is further called into question by their respective affidavits, contained in Volume 5 of the record, that are clearly subject to interpretation as placing the petitioner in the witnesses' presence at around 12:00 or 12:30 on the night of the shooting but as having him leaving shortly thereafter.  Thus, as attested by Jennifer Day:

> On the night the shooting took place Glen [Welch] came to my home for my daughter Kanisha.  This had to be at 12:00 midnight give or take "10 or 15" minutes because this is

around the time (Kanisha) was getting off from work and right after Glen left she called for someone to come pick her up.

And by Katrice Manchester:

> On the night of the shooting Glen came to Jennifer's looking for Kanisha who was still at work.... This had to be between 11:45 p.m. [and] 12:00 midnight because when he (Glen) left Kanisha called for a ride.

Accordingly, the Court agrees with the finding of the state court that (1) it was not deficient performance for the petitioner's attorney to fail to interview or call these witnesses when the trial court made clear that such testimony would not be allowed, and (2) the petitioner was not prejudiced in any event by the attorney's failure because there is no reasonable probability that the testimony of these witnesses would have altered the result of the trial.

**(d)     Failure to Effectively Cross-Examine Witnesses April Bennet, Frank Marquez and Leonard Williams.**

In this claim, the petitioner asserts that his attorney failed to effectively cross-examine three state witnesses, two of whom had provided statements to police at the time of the offense that omitted certain matters later testified to at trial and one of whom had either not provided a statement to police or had provided a statement that police investigators had failed to note having received.  The petitioner contends that his attorney should have pointed out the absence of important details in the witnesses' statements that the witnesses later testified to at trial. Specifically, the petitioner points to the testimony of April Bennet, who testified at trial that she observed the petitioner with a handgun shortly before the shooting, but who is noted in the police report only as having reported that she saw the person identified as the petitioner ejected from the club for fighting and thereafter heard shooting.  *See* Exhibit "B" to Post-Trial Memorandum in Support of Application for Post-Conviction Relief, Tr. R. Vol. 5.  The petitioner also points to the testimony of Frank Marquez, the disc jockey at the Mahogany Grill on the night of the shooting,

who testified at trial that he observed the petitioner shoot the victims, but whose hand-written statement on a photographic line-up form (identifying the petitioner) and whose statement summarized in a police officer's report prepared after the incident were only that he had observed the petitioner fighting on the dance floor and escorted out of club, *see id.*, Exhibits "D" and "E", and whose recorded "911" call to police after the shooting did not explicitly signify that he had seen the shooting. *See* Exhibit to Supplement to Post-Conviction Relief, filed November 28, 2005, Tr. R. Vol. 5. Finally, the petitioner points to the testimony of Leonard Williams, who testified at trial that he observed the petitioner shoot the victims but who was not identified by name in any of the police reports. The petitioner contends that the apparent omissions in the statements of April Bennet and Frank Marquez and the absence of any reference to Leonard Williams should have been emphasized to the jury.

In rejecting the petitioner's claim in this regard, the state court Commissioner concluded that the referenced omissions were explainable and that, even had they been emphasized to the jury, were not of such significance as to significantly diminish the credibility of the witnesses' testimony. Moreover, and most importantly, the testimony of the witnesses at trial was not in fact inconsistent with any of their prior statements. For example, with regard to Frank Marquez, the Commissioner noted that "none of his statements rule out the possibility that he also witnessed the shooting," and "[h]ad counsel attempted to attack Mr. Marquez' credibility based on his failure to specifically state in the police reports that he had witnessed the shooting, this Commissioner finds that this small discrepancy would not have impeached his trial testimony or impacted the verdict sufficient to satisfy *Strickland*." Commissioner's Report dated December 2, 2008, pp. 15-16. The Commissioner reached similar conclusions with regard to the other two witnesses. And with regard to Leonard Williams, the Commissioner noted that this witness was

in fact cross-examined at trial regarding whether he initially provided information to police officers, and the witness responded "that he had walked up to the police and let them know he had seen the shooting." *Id.* at pp. 16-17. Finally, considering the large number of persons inside and outside the bar who were interviewed by police officers after the shooting and the brief summarized recitations of their pertinent statements written in the police reports, it is not unreasonable to conclude that certain details, and even certain persons later discovered, may have been omitted from the reports.

The trial court accepted the Commissioner's recommendation regarding the foregoing, and this Court does not find an unreasonable application of the law as it applies to the facts of this case. On the night of the shooting, police investigators were questioning numerous witnesses who had been inside or outside the club before or during the shooting, and the resulting reports provide only very brief summarized recitations of the information provided by the various witnesses. There were apparently several incidents that occurred during a short space of time leading up to the shooting, and each of these events were observed by different persons with different perspectives. These events included an altercation involving the petitioner on the dance floor, his subsequent ejection from the club, his throwing of a bottle that apparently caused separate injury (while being ejected) and his return to the club shortly thereafter carrying a handgun. Considering the number of persons interviewed and the brevity of the resulting reports, it is to be anticipated that there would be omissions in the reports and in the resulting summaries of witness information. The Court agrees with the state court that, even had the referenced omissions been emphasized to the jury, the result of the trial would have been the same. Accordingly, the petitioner is unable to show any prejudice that resulted from his attorney's failures in this respect.

**(e)** **Failure to Adequately Prepare for Trial.**

The petitioner next contends that his attorney failed to adequately prepare for trial in several respects, specifically through (1) a failure to seek a severance of the felon-in-possession charge, (2) a failure to consult with the petitioner's prior attorneys, (3) a failure to interview state witnesses, and (4) a failure to obtain a transcript of the first trial. Of these, this Court finds only that the third enumerated claim potentially approaches an adequate assertion of deficient performance by the petitioner's attorney. As for the first claim, as discussed above, there was neither deficient performance nor a showing of actual prejudice resulting from the failure of the petitioner's attorney's to seek a severance of the felon-in-possession charge. Specifically, it is unlikely that even a timely motion to sever the offenses would have been granted, and there is no reasonable likelihood, in any event, that the presentation of evidence of the petitioner's single prior cocaine conviction, occurring several years prior to the charged shooting, led the jury to find him guilty in connection with the charges of second degree murder and attempted second degree murder.

Second, with regard to the attorney's alleged failure to consult with the petitioner's prior attorneys, it has not been shown what information these attorneys may have provided, and the speculative nature of this claim warrants rejection thereof. It further appears from the record that the petitioner's first retained attorney, James Manasseh, was discharged by the petitioner in August, 1996, a year prior to the petitioner's first trial, *see* Tr. R. at p. 57, after which the petitioner retained a second attorney, Orscini Bird, for only a brief period, apparently only to pursue a motion for bond reduction, *see id.* at p. 56. The petitioner's third retained attorney, Michael McClanahan, was employed in November, 1996, and represented the petitioner through the first two days of the petitioner's first trial in August, 1997. It appears, however, that attorney

McClanahan thereafter precipitated a mistrial by failing to appear at trial, and it further appears that such failure resulted in attorney McClanahan being thereafter confined for contempt of court, being subjected to a drug test that rendered a positive result, and ultimately in being suspended from the practice of law for a period of three (3) years, at least in part because of professional lapses occurring during his representation of the petitioner. *See In re McClanahan*, 26 So.3d 756, 765 (La. 2010). The petitioner has not pointed to any information or assistance that might have been obtained from or provided by any of these prior attorneys had his trial attorney conferred or attempted to confer with them, and the petitioner's PCR attorney did not call any of these attorneys to testify at the PCR hearing regarding such potential information or assistance. In the absence of any specified information that the petitioner's prior attorneys may have provided in aid of the defense, this Court finds no error in the state court's determination that this failure has not been shown to constitute deficient performance or to have resulted in any prejudice to the petitioner.

With regard to the petitioner's claim that his attorney failed to obtain a copy of the transcript of the petitioner's first trial, the Court agrees with the conclusion of the state trial court that an insufficient showing of deficient conduct has been made. It appears from the record that, upon being appointed to represent the petitioner in September, 1997, the attorney, according to his testimony at the PCR hearing, reviewed the entire record, reviewed the police reports and interviewed the petitioner on more than one occasion. *See* Transcript of PCR hearing, Tr. R. Vol. 9, pp. 6-7. According to representations made by the prosecutor at trial, the petitioner's attorney was also provided with "open file" discovery of the state's case, was a participant in several "at length" conferences with the prosecutor regarding the proposed testimony of witnesses at trial, and was offered an opportunity to listen to the audio recordings of the first trial. *See* Trial

Transcript, Tr. R. Vol. 2, p. 312. According to the petitioner's attorney, he submitted a written form through normal channels for the transcript to be prepared on October 8, 1997, and he filed a formal motion for a copy of the transcript on October 29, 1997. *See* Tr. R., Vol. I, p. 79. In addition, the attorney apparently participated in several consultations with the state court judge prior to trial with regard to obtaining a copy of the transcript. *See* Trial Transcript, Tr. R. Vol. 1, p. 312. On the morning of trial, after discussion between the parties on the record, the state court denied the pending motion for a copy of the transcript. *Id.* at p. 313.[4]

Based on this showing, the Court is unable to conclude that the actions of the petitioner's attorney in attempting to obtain a copy of the trial transcript were deficient as a matter of law. To the contrary, it appears that he did in fact take action to obtain a copy thereof, through a request to the court reporter, through conversations with the state trial judge, and through the filing of a formal motion, yet the brief period of time that was provided to him to prepare for trial conspired to prevent him from being successful in this regard. Whereas he perhaps could have earlier filed his formal motion for a copy of the transcript, there is no suggestion that an earlier-filed motion would have resulted in a different result. Further, the petitioner's PCR attorney did not submit as an exhibit a copy of the transcript of the first trial to establish that the transcript would have

---

    4. The failure of the state court to allow the petitioner a transcript of the prior trial presents an issue of potential significance, *see, e.g., Britt v. North Carolina*, 404 U.S. 226 (1971); *Doleman v. Cain*, 2000 WL 42209 (E.D. La. Jan. 14, 2000). However, as addressed above, this claim is not subject to review in this Court in light of the petitioner's procedural default relative to this issue. This Court expresses no opinion regarding the substantive merit of this claim, particularly in light of the alternative remedy afforded to the petitioner's attorney to review the audio recordings of the initial trial.

provided any benefit to the petitioner at the second trial.[5]  There is thus no showing of prejudice resulting from the attorney's failure.

Finally, the petitioner complains regarding his attorney's failure to interview any of the state's witnesses prior to trial.  In this regard, the petitioner's attorney testified at the PCR hearing that he had not in fact interviewed any of the state's witnesses, in part because he did not have an investigator to assist in locating them, in part because of the limited time allowed to him to prepare for trial, in part because he did not have a witness list and so was faced with the potentially daunting task of attempting to locate and interview all of the many persons identified in the police reports, and in part because of demands upon his time resulting from other pending criminal matters that needed his attention during the same time period.  In finding for the state in connection with this claim, the state court Commissioner ultimately concluded that the petitioner had not shown that he was prejudiced by his attorney's conduct in this regard.  Specifically, the Commissioner concluded that, in reviewing the record, reviewing the police reports and consulting with the petitioner, the attorney had undertaken the usual and normal actions of an attorney in preparing for trial and that "the petitioner fails to show how the outcome of this matter would have been different had counsel somehow managed to interview all of the eyewitnesses to the shooting."  *See* Commissioner's Report dated December 2, 2008, p. 19.  Considering the doubly deferential review engaged in by this Court in this context, the Court does not find that this determination constituted an unreasonable determination of the law in light of the facts

---

5. The petitioner appears to suggest that he has since obtained "a filed copy of [the] mistrial transcripts," *see* R. Doc. 28 at p. 47, but he has pointed out no discrepancies between the testimony provided at the first and second trials that might have assisted in the impeachment of witnesses at the second trial, had the transcripts been available, and he has not provided this Court with a copy of the referenced transcript.

presented.  Whereas the petitioner's attorney certainly could have been better prepared for the

petitioner's trial, the evidence against the petition was overwhelming, consisting of no fewer than

four eyewitnesses who observed the petitioner with a firearm at the time of the shooting, three of

whom testified that they observed the petitioner fire the fatal shots and two of whom were 100%

sure that the petitioner was the guilty party.  The petitioner's attorney testified at the PCR hearing

that his strategy at trial had been essentially to "discredit witnesses" and to "poke holes" in the

state's case and to thereby cause the state to come up short in meeting its burden of proof.  In

doing so, the petitioner's attorney cross-examined the state's witnesses and made an effort to

point out potential weaknesses in their testimony.  Considering the great weight of the evidence

against the petitioner in this case, however, it is difficult to discern, as found by the state court

Commissioner and accepted by the state court judge, that there is any reasonable likelihood of a

different result had the petitioner's attorney interviewed the state's witnesses prior to trial.  Nor

did the petitioner's PCR attorney, when given an opportunity to make a case of deficient

performance at the evidentiary hearing conducted for that purpose, present any evidence

regarding information that would have been uncovered through additional interviews or

preparation.  Accordingly, on the showing made, the Court is unable to overturn the state court's

determination that ineffective assistance of counsel has not been established in connection with

this claim.

**(f)    Failure to Request a Continuance or Stay.**

The petitioner next contends that, considering an admitted lack of preparedness on the part

of his attorney, the attorney should have timely moved for a continuance or stay prior to trial, *i.e.*,

within seven days of the commencement thereof in accordance with state law.  Upon a review of

this claim, the state court Commissioner recommended that relief be granted to the petitioner in

31

connection therewith.  See Commissioner's Report dated December 2, 2008, pp. 21-22.

Notwithstanding, the state district judge rejected the Commissioner's recommendation, finding that:

> Between the time of his appointment and the beginning of trial, Mr. Town filed motions on the petitioner's behalf and, at the post-conviction hearings, Mr. Town testified that he reviewed petitioner's court record, visited the petitioner in jail on at least two occasions, reviewed police report[s] and made notes from those reports.  "All of [Mr. Town's] actions are usual and customary for attorneys preparing for a criminal trial....  The fact that Mr. Town, in hindsight, may have wished for more time to prepare for trial ... does not, in itself, render his representation in this case ineffective." ... [T]his Court finds that Mr. Town's performance was, at the very least, adequate enough to protect petitioner's right to effective assistance of counsel under the Sixth Amendment....

Judge's Ruling on PCR Application dated May 20, 2010, pp. 6-7.  In addition, the district judge, who had also presided over the petitioner's prior trial and so had familiarity with the case, explicitly concluded that it was not deficient performance for the petitioner's attorney to have failed to move for a continuance because, "even if a continuance would have been requested, this Court would not have granted the same," *see id.*, p. 6, and "[t]rial counsel's performance cannot be found to be deficient because he failed to ask for a continuance that would not have been granted, provided that this Court's decision would be affirmed on appeal." *Id.*  This was not an unreasonable determination on the part of the trial judge considering that the offense had occurred more than two years previously, the petitioner had had three prior retained attorneys, had been granted prior continuances requested by those attorneys, and had participated in a full-blown prior trial that ended in a mistrial.  The state court judge further noted that the decision to grant a continuance was within his broad discretion and, "[g]enerally, the reviewing courts have declined to reverse convictions on appeal for improper denial of a continuance motion absent a showing of specific prejudice." *Id.*  Finally, the trial judge concluded that the petitioner had failed to show

any prejudice resulting from the failure to move for a continuance, both because the motion would have been denied and because the petitioner had "failed to show how a continuance would have changed the outcome of the trial ... [or] that the eyewitnesses' overwhelming testimony at this trial would have changed in any significant way if a continuance or a stay would have been granted." *Id.,* p. 7. This was not an unreasonable conclusion in light of the trial judge' familiarity with the case and the procedural posture presented. Accordingly, this Court will not second-guess this determination in hindsight, and the petitioner's claim in this regard should be rejected.

**(g)      Failure to Move to Quash the Felon-in-Possession Charge in the Indictment.**

Finally, the petitioner contends that his attorney should have moved to quash the felon-in-possession charge in the indictment based upon the fact that, in connection with his prior conviction, the petitioner had been granted probation, and a successful completion of the probationary period would have resulted in the dismissal of the charge under Louisiana law. The petitioner argues, accordingly, that at the exact time that he was indicted on the felon-in-possession charge, he was not actually a convicted felon, and the indictment was subject to attack for this reason. The state court Commissioner rejected this contention, noting that the revocation of the petitioner's probation, as occurred after his arrest and indictment, caused the earlier conviction to be retroactively valid and that, in any event, a motion to quash the indictment would not have succeeded because, under Louisiana law, "[a] defendant's conviction does not have to be final before a defendant can be charged and convicted of possession of [a] firearm by a convicted felon." Commissioner's Report dated December 2, 2008, p. 23. Thus, it was not deficient performance to refrain from filing a motion that had no merit. Finally, the Commissioner noted that even had the indictment been subject to attack for this reason, a successful motion to quash would only have resulted in a subsequent valid grand jury indictment, with "every likelihood that

33

these proceedings would still have resulted in the petitioner being convicted." *Id.* Accordingly, the state court did not err in rejecting the petitioner's claim in this regard.

V and VI. The Petitioner's Supplemental Claims Regarding Prosecutorial Misconduct, Ineffective Assistance Of Counsel On Appeal, And DNA Testing Are Procedurally Barred

The petitioner's final two claims relate to issues presented in his supplemental PCR applications presented *pro se* before the state trial court many years after the filing of the initial PCR application, long after a remand from the Louisiana appellate court for the purpose of conducting an evidentiary hearing on then-presented claims of ineffective assistance of counsel, and more than six months (at the earliest) after the referenced evidentiary hearing was concluded. Specifically, whereas the petitioner's initial PCR was filed in 2000 and the evidentiary hearing concluded in June, 2004, the petitioner's supplemental claims regarding alleged prosecutorial misconduct were not submitted until February, 2005, and his claims regarding ineffective assistance of counsel on appeal and the right to DNA testing were not submitted until November, 2006.

The state court Commissioner's Report ultimately concluded that the proposed supplemental PCR claims should not be considered, and the state courts did not thereafter address these claims. The petitioner asserts, however, that these claims should not be considered to be procedurally defaulted because they have never been substantively addressed, notwithstanding that they were presented in brief to each of the state appellate courts. Further, the petitioner suggests that the failure of the state courts to expressly consider these claims warrants a remand to the state court for further consideration thereof.

This Court finds no error in the refusal of the state trial court to consider the petitioner's supplemental PCR claims. As outlined in the procedural history of the petitioner's claims, *supra*,

his original PCR application, not including the proposed supplemental claims, were rejected by the state trial court as being without merit and, upon supervisory review in the intermediate state appellate court, were remanded for an evidentiary hearing with regard to then-presented claims of alleged ineffective assistance of counsel. Upon that remand, the petitioner was provided with appointed counsel, and the trial court directed the petitioner to supplement his PCR application to state with specificity the asserted deficiencies of his attorneys and to assert any other claims within ninety (90) days. *See* Commissioner's Report dated December 2, 2008, p. 3. The petitioner thereafter presented, both through counsel and *pro se*, several supplemental PCR applications, outlining claims of alleged ineffective assistance that have been addressed herein. Finally, an evidentiary hearing was conducted in 2004 in connection with the petitioner's claims of ineffective assistance before the PCR court, and it was only after that evidentiary hearing that the petitioner attempted, again *pro se*, to supplement his application with the instant distinct and unrelated claims of prosecutorial misconduct, ineffective assistance of counsel on appeal and entitlement to DNA testing. The state court Commissioner rejected these claims, finding that, "as the State has already responded to the merits of the petitioner's claims and considering that the instant application for post-conviction relief has been pending since August of 2000, this Commissioner recommends that the petitioner not be allowed to supplement his application with these additional claims." *Id.*, p. 6. The state trial judge thereafter implicitly accepted the Commissioner's recommendation regarding the supplemental claims, dismissing the petitioner application without addressing them.

As discussed above in connection with the petitioner's claims II and III, a refusal by a state court to consider one or more claims for procedural reasons that are independent of the federal issues presented acts as a bar to the consideration of these claims by the federal court.

*Coleman v. Thompson*, *supra,* 501 U.S. at 729; *Moore v. Roberts, supra*, 83 F.3d at 701.  In the instant case, the state district court clearly declined to consider the petitioner's supplemental claims because they were untimely, and the state appellate courts thereafter denied review without comment.  In this regard, Louisiana Code of Criminal Procedure article 930.4(E) directs that a supplemental PCR application "shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."  Accordingly, the last state court to specifically address these supplemental claims denied review for procedural reasons that are independent of the federal claims presented.  As a result, a consideration of these claim by this Court is not appropriate unless the petitioner is able to show that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by (1) demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice."  *See Coleman v. Thompson, supra*, 501 U.S. at 750.  The petitioner has not made a showing sufficient to warrant a consideration of these claims in this regard.  Accordingly, the petitioner's supplemental claims should be rejected.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although the Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a petitioner's constitutional claims on

procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of the Petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that the Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

<u>RECOMMENDATION</u>

It is recommended that the petitioner's application for habeas corpus relief be dismissed. It is further recommended that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on March 9, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**